SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JAMES M. CHADWICK, Cal. Bar No. 157114
jchadwick@sheppardmullin.com
DYLAN J. PRICE, Cal. Bar No. 258896
dprice@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310.228.3700
Facsimile:   310.228.3701

Attorneys for Specially Appearing Defendants
BARAJOUN ENTERTAINMENT FZ-LLC
and AYMAN JAMAL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| IBRAHEEM ABBAS,<br><br>        Plaintiff,<br><br>    v.<br><br>VERTICAL ENTERTAINMENT,<br>LLC, et al.,<br><br>        Defendants. | Case No. 2:18-cv-7399-CBM-AFM<br><br>**SPECIALLY APPEARING DEFENDANTS BARAJOUN ENTERTAINMENT FZ LLC AND AYMAN JAMAL'S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>[*Declaration of James Chadwick filed concurrently herewith*]<br><br>Date: June 18, 2019<br>Time: 10:00 a.m.<br>Place: Courtroom 8B<br>Judge: The Honorable Consuelo B. Marshall |

1    TO THE HONORABLE COURT, ALL PARTIES AND THEIR
2    ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that on June 18, 2019, at 10:00 a.m., or as soon
4    thereafter as counsel may be heard in Courtroom 8B of the United States District
5    Court for the Central District of California, located at 350 West 1st Street, Los
6    Angeles, California 90012, the Honorable Consuelo B. Marshall presiding, Specially
7    Appearing Defendants Barajoun Entertainment FZ LLC and Ayman Jamal
8    (collectively, the "Barajoun Defendants") will and hereby do move the Court for an
9    Order imposing sanctions on Plaintiff and his counsel and law firm of record, Michael
10   S. Traylor of Traylor Law Office, PC, pursuant to Rule 11 of the Federal Rules of
11   Civil Procedure ("Rule 11") and the Court's inherent authority to deter litigation
12   abuse.

13   The Barajoun Defendants' Motion is made on the grounds that Plaintiff and his
14   counsel have asserted claims for copyright infringement based on frivolous claims of
15   copyright ownership to the works in question.  Further, Plaintiff and his counsel have
16   asserted false factual allegations in support of personal jurisdiction over the Barajoun
17   Defendants.  Plaintiff and his counsel were aware that Plaintiff's ownership claims
18   were frivolous and jurisdictional allegations untrue (or, at the very least, had failed to
19   conduct a reasonable investigation into their merit) when they filed the Complaint.
20   They asserted these claims in bad faith and manufactured baseless allegations to assert
21   personal jurisdiction over the Barajoun Defendants, where none exists. As a result,
22   the Court should impose sanctions against Plaintiff and his counsel action by: (1)
23   dismissing the Complaint with prejudice, and (2) ordering Plaintiff and his counsel to
24   reimburse the Barajoun Defendants for the legal fees and costs incurred in bringing
25   this Motion and otherwise responding to the Complaint.

26   This Motion is made following the conference of counsel pursuant to C.D. Cal.
27   Local Rule 7-3, which took place on April 8, 2019.  [Declaration of James Chadwick,
28   ¶ 4.]

1    This Motion is based on this Notice, the accompanying Memorandum of Points

2    and Authorities and the concurrently filed Declaration of James Chadwick, the

3    Barajoun Defendants' previously filed Notice of Motion and Motion to Dismiss

4    Pursuant to Federal Rule of Civil Procedure 12(b) and supporting Declarations of

5    Dylan J. Price, Ayman Jamal, Dr. Qaisar Hamed Metawea and Abdelaziz Ahmed

6    Alrasheed, Compendium of Exhibits (and exhibits attached thereto), Request for

7    Judicial Notice (and exhibits subject thereto) and Notice of Lodging (and exhibits

8    lodged pursuant thereto), as well as all pleadings, papers and other documentary

9    materials in the Court's file for this action, any other matters of which this Court may

10   or must take judicial notice, and such other matters as this Court may consider.

11   Dated:  May 17, 2019

12                            SHEPPARD, MULLIN, RICHTER & HAMPTON
                             LLP
13

14

15                            By    _____
                                            /s/ James M. Chadwick
16                                       JAMES M. CHADWICK
                                          DYLAN J. PRICE
17                              Attorneys for Specially Appearing Defendants
                                BARAJOUN ENTERTAINMENT FZ LLC
18                                    and AYMAN JAMAL

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

    A.  The Barajoun Defendants .......................................................... 2

    B.  Plaintiff and His Employment at VisualizIt ................................. 2

    C.  Defendant Jamal and the Idea for a Bilal Film ........................... 2

    D.  Barajoun and the Picture .......................................................... 4

    E.  The Saudi Litigation ................................................................. 4

    F.  Plaintiff's Cease and Desist Letter ............................................. 6

    G.  Plaintiff's Complaint ................................................................ 6

    H.  The Barajoun Defendant's Motion to Dismiss and Notice of This Motion .................................................................................... 7

III. LEGAL STANDARD ........................................................................... 7

IV. THE COURT SHOULD IMPOSE SANCTIONS ON PLAINTIFF AND HIS COUNSEL .................................................................................. 9

    A.  Plaintiff and His Counsel Knew or Should Have Known that Plaintiff's Copyright Ownership Claims Are Baseless ...................... 9

    B.  Plaintiff and His Counsel Knew or Should Have Known that Plaintiff's Jurisdictional Allegations Are False ................................. 12

V.  CONCLUSION .................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Christian v. Mattel, Inc.*
   286 F.3d 1118 (9th Cir. 2002) .................................................................. 8

*Fink v. Gomez*
   239 F.3d 989 (9th Cir. 2001) .................................................................... 8

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*
   801 F.2d 1531 (9th Cir. 1986) .................................................................. 8

*Hendrix v. Naphtal*
   971 F.2d 398 (9th Cir. 1992) .................................................................. 12

*J. Walter Thomspon Puerto Rico v. Latin American Music Co., Inc.*
   355 F.Supp.3d 110 (D. P.R. 2019) ............................................... 9, 10, 12

*Johnson v. Tuff N Rumble Management, Inc.*
   2000 WL 622612 (E.D.La. May 15, 2000) ............................................... 9

*In re Keegan Mgmt., Sec. Litig.*
   78 F.3d 431 (9th Cir. 1996) ...................................................................... 8

*Love v. The Mail On Sunday*
   2006 WL 4046169 (C.D. Cal. July 13, 2006) .......................................... 12

*Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*
   792 F.2d 797 (9th Cir. 1986) .................................................................. 12

*Pannonia Farms, Inc. v. USA Cable*
   2004 WL 1276842 (S.D.N.Y. June 8, 2004) ............................................ 9

*Precision Transducer Systems v. STFO Trading LLC*
   2009 WL 10700319 (C.D. Cal. Oct. 15, 2009) ....................................... 12

*Smith v. Ricks*
   31 F.3d 1478 (9th Cir. 1994) .................................................................... 8

## **Statutes**

28 U.S.C. § 1927 ............................................................................................ 8

**<u>Other Authorities</u>**

Federal Rule of Civil Procedure 12(b) ........................................................................7

Federal Rule of Civil Procedure Rule 11.................................1, 7, 8, 9, 10, 12, 13, 14

## I.      INTRODUCTION

This action represents an abuse of the litigation process by a foreign defendant. Plaintiff Ibraheem Abbas ("Plaintiff"), a resident of Saudi Arabia, filed this copyright action against Defendants Barajoun Entertainment FZ LLC ("Barajoun") and Ayman Jamal ("Jamal") (collectively, the "Barajoun Defendants") claiming ownership of certain works, despite: (a) having entered into contractual agreements (governed by Saudi law) that transferred any such rights to Jamal; and (b) his prior position in Saudi legal proceedings that he *does not own* the rights to the works at issue. Moreover, Plaintiff filed suit against the Barajoun Defendants in this Court despite the fact that neither Barajoun nor Jamal has *any* contacts with California. The *only* so-called "facts" alleged in the Complaint in support of personal jurisdiction against the Barajoun Defendants are Plaintiff's allegations that Jamal is "a resident of the County of Los Angeles, State of California" and that Barajoun "has a principal place of business in the County of Los Angeles, State of California." [Complaint ¶ 5.] These allegations are false; Barajoun's only place of business is in Dubai, United Arab Emirates ("UAE"), and Jamal is a citizen of Saudi Arabia and resides in Saudi Arabia and the UAE.

Plaintiff and his attorney were well aware that Plaintiff's ownership claims were frivolous and his jurisdictional allegations untrue (or, at the very least, had failed to conduct a reasonable investigation into their merit) when they filed the Complaint. They asserted these claims in bad faith and manufactured baseless allegations to assert personal jurisdiction over the Barajoun Defendants, where none exists. Plaintiff's conduct warrants sanctions under Rule 11 of the Federal Rules of Civil Procedure ("Rule 11").

Specially Appearing Defendants Barajoun and Jamal therefore respectfully request that the Court impose sanctions on Plaintiff and his attorney and law firm of record, Michael S. Traylor of Traylor Law Office, PC, pursuant to Rule 11 and the Court's inherent authority to deter litigation abuse.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Barajoun Defendants

Barajoun is an animation and digital effects studio organized under the laws of the UAE. [*See* Dkt. No. 56-2 (Declaration of Ayman Jamal ("Jamal Decl.") ¶ 4).] Although Plaintiff alleges that Barajoun "has a principal place of business in the County of Los Angeles, State of California" [Compl. ¶ 5], that is false. Barajoun's only place of business is in Dubai, UAE . [Dkt. No. 56-2 (Jamal Decl. ¶ 4).]

Jamal is the founder of Barajoun. [Dkt. No. 56-2 (Jamal Decl. ¶ 4).] Plaintiff alleges that Jamal "is believed to be . . . a resident of the County of Los Angeles, State of California." [Compl. ¶ 5.] That is also false. Jamal is a citizen of Saudi Arabia and at all relevant times has resided in Jeddah, Saudi Arabia and Dubai, UAE. [Dkt. No. 56-2 (Jamal Decl. ¶ 3).]

### B.     Plaintiff and His Employment at VisualizIt

Plaintiff is a citizen and resident of Saudi Arabia. [Compl. ¶ 1.] Plaintiff and Jamal co-founded Baloura for Media Production, a limited liability company formed under the laws of Saudi Arabia, which operated under the trade name VisualizIt ("VisualizIt"). [Dkt. No. 56-2 (Jamal Decl. ¶ 6).] At all relevant times, VisualizIt's only place of business was in Jeddah, Saudi Arabia. [Id.] Plaintiff worked as an employee—namely, Chief Creative Officer—of VisualizIt in Saudi Arabia pursuant to a written employment agreement (the "Employment Agreement"). [Id. (Jamal Decl. ¶ 7).   *See also* Dkt. No. 56-7, pp. 2-3 (Employment Agreement).] The Employment Agreement provides that it is governed by the laws of Saudi Arabia. [Id. (Employment Agreement ¶ 7).] Every interaction between Plaintiff and Jamal has taken place in Saudi Arabia or elsewhere in the Middle East. [Dkt. No. 56-2 (Jamal Decl. ¶ 8).]

### C.     Defendant Jamal and the Idea for a Bilal Film

In or about 2005 to 2006, Jamal (then living in Saudi Arabia) conceived and began pursuing the idea of an animated film based on the historical character of Bilal

ibn Rabah, a famous companion of Muhammed whose life story has been the subject of dozens of books and at least four motion picture films. [Dkt. No. 56-2 (Jamal Decl. ¶ 9).]

Some of the initial character sketches relating to Jamal's concept for an animated film based on Bilal (which were used to garner interest in the project) were created by another employee of VisualizIt (not Plaintiff) who resides in Saudi Arabia. Jamal entered into an agreement with the employee directly and the agreement was entered into in Saudi Arabia. [Dkt. No. 56-2 (Jamal Decl. ¶ 10).][1]

In addition, as part of developing the Bilal project and to ensure that he would have all necessary rights to pursue the project, Jamal and VisualizIt entered into an agreement, dated as of May 26, 2012, pursuant to which Jamal engaged VisualizIt to, among other things, create the sketches for Jamal (the "Assignment Agreement"). [Dkt. No. 56-2 (Jamal Decl. ¶ 11) and Dkt. No. 56-7, pp. 5-8 (Assignment Agreement).] The Assignment Agreement grants to Jamal all right and title to the works prepared by employees of VisualizIt. [Dkt. No. 56-2 (Jamal Decl. ¶ 12) and Dkt. No. 56-7, p. 6 (Assignment Agreement, ¶¶ 4-5, 8).] Plaintiff executed the Assignment Agreement on behalf of VisualizIt in Saudi Arabia. The Assignment Agreement provides that "[t]he interpretation and construction of this Agreement, and all matters relating hereto, shall be governed by and in accordance with the laws of Saudi Arabia." [Dkt. No. 56-7, p. 7 (Assignment Agreement, ¶ 18).] It also provides that "[a]ny dispute which may arise out of or relating to this Agreement…***shall*** be referred to the competent judicial authority of Saudi Arabia, the decision of which shall be final and binding." [Dkt. No. 56-7, p. 7 (Assignment Agreement, ¶ 19).]

---

[1] Jamal also entered into agreements with other freelance visual artists (who did not work for VisualizIt) to create materials relating to the Bilal concept. All of those agreements were entered into in the Middle East and all of the freelance artists that Jamal and/or Barajoun contracted with are located are located in the Middle East. [Dkt. No. 56-2 (Jamal Decl. ¶ 13).]

**D.     Barajoun and the Picture**

Jamal assigned all intellectual property rights associated with the Bilal materials to Barajoun, which he established in 2013 in Dubai, UAE. [Dkt. No. 56-2 (Jamal Decl. ¶ 14).] Thereafter, Barajoun created the Picture based on an original screenplay created for Barajoun. [Id.] All of the artwork and animation for the Picture was developed by Barajoun's employees at Barajoun's animation studio in Dubai. [Id.] All of the principal documents and all of the individuals at Barajoun with knowledge relating to the development and production of the Picture are located in the Middle East. [Id.] The Picture premiered at the 12th Annual Dubai International Film Festival on December 9, 2015 and has since been exhibited worldwide by third parties. [Id. (Jamal Decl. ¶ 16).] Barajoun holds a U.S. Copyright Registration for the Picture. [Id. and Dkt. No. 56-9, p. 20 (Copyright Registration).]

**E.     The Saudi Litigation**

On February 22, 2015, Barajoun released the trailer for the Picture on its YouTube channel. [Dkt. No. 56-2 (Jamal Decl. ¶ 15).] Shortly thereafter, Plaintiff posted a video on VisualizIt's YouTube channel,[2] which featured excerpts from the Picture's trailer contrasted with images and animation that Plaintiff claimed were owned by VisualizIt. [Id.] Barajoun then filed a lawsuit against Plaintiff in Saudi Arabia for copyright infringement (the "Saudi Lawsuit"). [Id.] In the Saudi Lawsuit, Barajoun alleged exclusive ownership of the rights in and to the Picture and claimed that Plaintiff's use of clips from the trailer violated Barajoun's copyrights. [Dkt. No. 56-3 (Declaration of Dr. Qaisar Metawea ("Metawea Decl.") ¶ 10) and Dkt. No. 56-7, pp. 27-37 (Claim filed in Saudi Lawsuit).]

On or about June 25, 2015, Plaintiff filed his response to Barajoun's Saudi Lawsuit and, thereafter, Saudi's Copyright Law Review Committee for

---

[2] *See* https://www.youtube.com/watch?v=yH3fIURAhC0.

SMRH:4824-3160-0023.4

Infringements[3] conducted an investigation into Barajoun's claims. Notably, in his response to the Saudi Lawsuit, Plaintiff did not claim that *he* was the owner of the copyrights relating to the Bilal Properties. Quite the opposite, consistent with his claims in the subject video, Plaintiff claimed that ***VisualizIt*** (also known as Balloura) ***developed and owned the intellectual property rights associated with the Bilal Properties***. [Dkt. No. 56-3 (Metawea Decl. ¶ 11) and Dkt. No. 56-7, pp. 45-46 (Saudi Lawsuit Ruling) (noting Plaintiff's position that "the work on the film began ***in Balloura***" and that "the film falls ***under the intellectual property of Balloura Media Production Limited Liability Company***") (emphasis added).]

As to Barajoun's infringement claims, Plaintiff argued that his posting was meant to show the similarities between the works he claimed were owned ***by VisualizIt*** (i.e., Balloura, identified in the video with the designation "VisualizIt 2012") and the clips from the Picture. [Dkt. No. 56-3 (Metawea Decl. ¶ 11) and Dkt. No. 56-7, pp. 46 (Saudi Lawsuit Ruling) (noting Plaintiff's position that his posting "was highlighting ***the role of Balloura*** in the creation and development of the idea" by comparing the clips from the Picture's trailer "to the shots which had been ***produced under the umbrella of Balloura***") (emphasis added).] In reply to Plaintiff's arguments, Barajoun pointed out that Plaintiff had transferred all rights that VisualizIt/Balloura may have had in any Bilal materials to Jamal. [Dkt. No. 56-3 (Metawea Decl. ¶ 11) and Dkt. No. 56-7, p. 47 (Saudi Lawsuit Ruling) (noting Barajoun's position that "the ***Defendant transferred all Balloura's works to Mr. Ayman Jamal***, under the transfer contract….") (emphasis added).]

---

[3] Under Saudi law, a party is able to bring a claim for infringement of his copyright by filing a lawsuit with the Ministry of Culture and Media, which then assigns the dispute to the Copyright Law Review Committee for Infringements (the "Copyright Law Review Committee"). The Copyright Law Review Committee has the full power of judicial investigation and protection of evidence, and is empowered to grant various remedies. [Dkt. No. 56-3 (Metawea Decl. ¶ 8).]

After considering the parties' briefs and hearing oral testimony from Plaintiff and Barajoun, on or about January 29, 2018, the Saudi Copyright Law Review Committee issued a ruling, concluding that Plaintiff's use of the clips from the Picture's trailer constituted a fair use under Saudi copyright law because they were all attributed to Barajoun. [Dkt. No. 56-3 (Metawea Decl. ¶ 12) and Dkt. No. 56-6, p. 48 (Saudi Lawsuit Ruling).][4]

**F.    Plaintiff's Cease and Desist Letter**

On or about March 21, 2018, Plaintiff's counsel sent a cease and desist letter to defendant Vertical Entertainment, LLC ("Vertical") (which theatrically released the Picture in the United States), claiming copyright ownership in the Picture. [Declaration of James Chadwick ("Chadwick Decl.") ¶ 6, Ex. C (Cease and Desist Letter).] The letter, written on Mr. Traylor's letterhead and signed by Mr. Traylor, includes Barajoun and Jamal on its service list and identifies their address as being in Dubai, UAE. [Id.]

**G.    Plaintiff's Complaint**

On August 23, 2018, Plaintiff filed his Complaint against the Barajoun Defendants (among others), claiming that he is the owner of the rights to the "Bilal Properties"—without any reference to critical aspects of his dealings with Jamal and VisualizIt. [Dkt. No. 1 (Complaint).]  The Complaint makes no mention of his Employment Agreement with VisualizIt, the Assignment Agreement Plaintiff executed on behalf of VisualizIt, or Plaintiff's prior admissions in the Saudi Lawsuit that the Bilal Properties were owned by VisualizIt. Moreover, despite Plaintiff's prior business and legal dealings with Jamal, all of which have been in the Middle East, the Complaint inexplicably alleges that Jamal "is believed to be . . . a resident of the

---

[4] The parties, including Plaintiff, have also been involved in other lawsuits in Saudi Arabia, including two regarding the liquidation of VisualizIt, one of which was recently commenced by Plaintiff. [Dkt. No. 56-3 (Metawea Decl. ¶ 5).]

County of Los Angeles, State of California" and that Barajoun "has a principal place of business in the County of Los Angeles, State of California." [Complaint ¶ 5.]

**H.     The Barajoun Defendant's Motion to Dismiss and Notice of This Motion**

On April 23, 2019, the Barajoun Defendants filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b) (the "Motion to Dismiss"). [Dkt. No. 56.] The Motion to Dismiss seeks dismissal of Plaintiff's claims on numerous grounds, including that Plaintiff is not the owner of the works at issue (and, therefore, lacks standing to bring his claims) and that the Barajoun Defendants do not have sufficient contacts with California for them to be subject to personal jurisdiction in the Central District of California. [Id.]

Pursuant to the requirements of Rule 11(c)(2), on April 24, 2019, counsel for the Barajoun Defendants provided Plaintiff's counsel with a draft of this Motion in substantially the form as filed. [Chadwick Decl. ¶ 3; Exs. A, B.][5] Since that time, Plaintiff has made no effort to withdraw or appropriately correct his sanctionable allegations, making the present motion ripe for adjudication.

**III.    LEGAL STANDARD**

Under Rule 11(b), an attorney who submits a pleading to this Court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

- "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" Fed. R. Civ. P. 11(b)(1).

---

[5] In addition, counsel for the Barajoun Defendants met and conferred with Plaintiff's counsel regarding this motion on April 2, 2019. Plaintiff's counsel confirmed that Plaintiff would not withdraw the Complaint nor dismiss the claims against the Barajoun Defendants.  [Chadwick Decl. ¶ 3.]

- "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" Fed. R. Civ. P. 11(b)(1).

- "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation and discovery" Fed. R. Civ. P. 11(b)(3).

One of the fundamental purposes of Rule 11 is to "reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, ... [thereby] avoid[ing] delay and unnecessary expense in litigation." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986) (internal quotation marks and citations omitted). "Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). *See also Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994) ("Counsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head."). If the Court determines that Rule 11(b) has been violated, the Court may impose appropriate sanctions. Fed. R. Civ. P. 11(c)(1).

Separate and apart from Rule 11, the Court has inherent power to sanction parties or their attorneys for improper conduct. *Fink v. Gomez,* 239 F.3d 989, 991 (9th Cir. 2001). This "inherent power extends to a full range of litigation abuses," *Fink,* 239 F.3d at 992, and requires a finding of "bad faith or conduct tantamount to bad faith." *Id.* at 994. Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. *In re Keegan Mgmt., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). Additionally, pursuant to 28 U.S.C. § 1927, the Court may require "[a]ny attorney or

other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

## IV. THE COURT SHOULD IMPOSE SANCTIONS ON PLAINTIFF AND HIS COUNSEL

### A. Plaintiff and His Counsel Knew or Should Have Known that Plaintiff's Copyright Ownership Claims Are Baseless

Rule 11 sanctions are warranted where, as here, a plaintiff files a copyright infringement lawsuit based on a frivolous claim of copyright ownership. *See J. Walter Thompson Puerto Rico v. Latin American Music Co., Inc.*, 355 F.Supp.3d 110 (D. P.R. 2019) (awarding sanctions under Rule 11 where the plaintiff's claim of copyright ownership was barred by the doctrine of collateral estoppel); *Pannonia Farms, Inc. v. USA Cable*, 2004 WL 1276842 (S.D.N.Y. June 8, 2004) (awarding Rule 11 sanctions against plaintiff in infringement action on the grounds that the plaintiff's claims were baseless because the plaintiff gave up any interest in copyright in prior settlement agreement and the literary characters at issue were in the public domain); *Johnson v. Tuff N Rumble Management, Inc.*, 2000 WL 622612, *6-8 (E.D.La. May 15, 2000) (awarding Rule 11 sanctions as a result of baseless claims of copyright ownership).

*J. Walter Thompson* is instructive. In that case, the plaintiffs—a performing arts society and affiliated music publishing company—brought suit against the defendant advertising company, alleging infringement of the copyright in a musical composition that the plaintiffs claimed to own. *J. Walter Thompson*, 355 F.Supp.3d at 113. The defendants moved for judgment on the pleadings, arguing that the plaintiffs were collaterally estopped from claiming ownership of the musical composition in question as a result of a jury's finding in a prior lawsuit that the plaintiffs did not own the copyright. *Id*. The trial court granted the defendant's motion and issued an order to show cause as to why the court should not impose sanctions against Plaintiffs under Rule 11 for filing a frivolous lawsuit. *Id*. After further

briefing, the district court awarded sanctions under Rule 11, concluding that plaintiff's counsel was "'culpably careless' for failing to grasp" that the plaintiffs were collaterally estopped from asserting copyright ownership over the work in question. *Id*. at 117.

Here, Plaintiff alleges the infringement of three allegedly copyrighted works: (1) a "script and literary work for an animated motion picture"; (2) a "set of animatics/graphics and visual works which illustrates the major themes of the BILAL script" (the "Bilal Animatics"); and (3) a "set of drawings which illustrate the major themes and characters of the "BILAL script" (the "Bilal Artwork") (which Plaintiff refers to in the Complaint, collectively, as the "Bilal Properties"). [Compl. ¶ 2.] As in *J. Walter Thompson*, Plaintiff's claim of copyright ownership over the Bilal Properties is frivolous.

As an initial matter, there is ***no record*** of Plaintiff having obtained a U.S. Copyright registration for any script or literary work relating to Bilal. [Dkt. No. 56-1 (Price Decl. ¶ 9) and Dkt. No. 56-7, p. 70 (Copyright Records Search).] Thus, the allegation of Paragraph 2(a) of the Complaint is apparently false. Moreover, as to the Bilal Artwork, Plaintiff's copyright registration states that the Bilal Artwork was created in 2012. [Dkt. No. 56-1 (Price Decl. ¶ 11) and Dkt. No. 56-7, p. 76 (Copyright Office Website Registration Record).][6] At that time, Plaintiff was working for VisualizIt under the Employment Agreement, which provides that it is governed by

---

[6] Although Plaintiff's registration for the Bilal Animatics identifies the date of creation of those materials as 2005 (*see* Dkt. No. 56-7, p. 72), that is obviously incorrect. A review of the deposit materials for the Bilal Animatics reveals that many of the images that make up the animations are images from the Bilal Artwork, which Plaintiff claims was not created until 2012. [Dkt. No. 56-1 (Price Decl. ¶ 13) and Dkt. No. 56-9, pp. 2-7.] Clearly, Plaintiff could not have created the Bilal Animatics ***in 2005*** when the images that make up the animatics were not created ***until 2012***. Rather, logically, the Bilal Animatics must have been created in or after 2012, during which time Plaintiff was an employee of VisualizIt working under his Employment Agreement.

Saudi law. Although he actually did nothing, under well-established Saudi labor law any work that Plaintiff may claim to have done on any "drawings" created in 2012 would have been owned by VisualizIt. [*See* Dkt. No. 56-3 (Metawea Decl. ¶ 13).] Plaintiff must have been aware of the fact that he executed the Employment Agreement, and Plaintiff's counsel conceded that he was aware of Plaintiff's employment with VisualizIt during meet and confer discussions with counsel for the Barajoun Defendants. [Chadwick Decl. ¶ 4.][7]

Plaintiff's copyright ownership claims in this action are particularly baseless given Plaintiff's position in the Saudi Lawsuit that the rights to the Bilal Properties were ***owned by VisualizIt***.[8] As discussed in the Motion to Dismiss, Plaintiff is ***judicially estopped*** from claiming ownership of the Bilal Materials given that: (1) Plaintiff's position in the Saudi Lawsuit that the Bilal Properties were developed and owned by VisualizIt is "clearly inconsistent" with his position, in this case, that he is the creator and owner of the materials; (2) the Saudi Copyright Law Review Committee accepted Plaintiff's position in the Saudi Lawsuit when it ruled in his favor that his posting of clips from the trailer of the Picture constituted a fair use under Saudi law; and (3) Plaintiff would be given an unfair advantage if he were permitted to play fast and loose with the Court and now assert that he is the owner of the

---

[7] Moreover, many of the "drawings" contained in the deposit copy that Plaintiff's counsel submitted to the U.S. Copyright Office in connection with the "Bilal Artwork" contain references ***attributing the works to VisualizIt***. For example, the ***first*** page of the deposit copy of the Bilal Artwork contains three images (which are merely screenshots from the YouTube video posted by Plaintiff that gave rise to the Saudi Lawsuit) with the designation "VisualizIt 2012." [Dkt. No. 56-8, pp 4 (Bilal Artwork Deposit Copy). Further, the VisualizIt logo appears in the bottom right-hand corner of many of the drawings contained in the deposit copy. [Id., pp. 5, 21-25, 28-31, 34-43 (Bilal Artwork Deposit Copy).]

[8] A review of the YouTube video posted by Plaintiff reveals that the images and animation that Plaintiff claimed were owned by VisualizIt in the YouTube video and related Saudi Lawsuit are all included as part of the Bilal Artwork and Bilal Animatics over which Plaintiff claims ownership in this action. [Dkt. No. 56-1 (Price Decl. ¶¶ 14-15 and Dkt. No. 56-9, pp. 9-16, 18.]

copyright to the Bilal Properties. Here, as in *J. Walter Thompson*, Plaintiff and his counsel were (at least) "'culpably careless' for failing to grasp" that Plaintiff is judicially estopped form asserting copyright ownership over the Bilal Properties. *J. Walter Thompson*, 355 F.Supp.3d at 117.

## B. Plaintiff and His Counsel Knew or Should Have Known that Plaintiff's Jurisdictional Allegations Are False

Rule 11 sanctions are also warranted based on an attorney's failure to make a reasonable and competent inquiry as to basic jurisdictional facts and where jurisdictional allegations are made without factual foundation. *See, e.g.*, *Hendrix v. Naphtal*, 971 F.2d 398, 399 (9th Cir. 1992) (affirming imposition of Rule 11 sanctions where attorney failed to conduct a reasonable investigation of a client's domicile before filing a diversity action); *Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797, 800 (9th Cir. 1986) (affirming sanctions where plaintiff filed a complaint that completely lacked a factual foundation for subject matter jurisdiction). *Love v. The Mail On Sunday*, 2006 WL 4046169 (C.D. Cal. July 13, 2006) (imposing Rule 11 sanctions in connection with jurisdictional allegations). *See also Precision Transducer Systems v. STFO Trading LLC*, 2009 WL 10700319 (C.D. Cal. Oct. 15, 2009) (noting that the plaintiff had "barely satisfied his obligations under Rule 11 to conduct a reasonable factual investigation [into jurisdictional allegations] prior to filing the Complaint").

Here, Plaintiff's jurisdictional allegations regarding the Barajoun Defendants are factually baseless. Barajoun is located in Dubai; it has no operations—much less its "principal place of business"—in California. [Dkt. No. 56-2 (Jamal Decl. ¶ 4).] Likewise, Jamal (the founder of Barajoun) is a citizen of Saudi Arabia who resides in Saudi Arabia and Dubai; he does not and has ***never*** maintained a residence in California. [*Id.* (Jamal Decl. ¶ 3).] Plaintiff and his attorney were well aware that the jurisdictional allegations concerning the Barajoun Defendants were false when they filed the Complaint. As Plaintiff admits in the Complaint, he is, himself, a citizen and

resident of Saudi Arabia and claims to be a previous "business associate" of Jamal. [Complaint ¶¶ 1, 5] Furthermore, as discussed above and in the Motion to Dismiss, Plaintiff was an employee of Jamal's company VisualizIt based in Jeddah, Saudi Arabia. Every personal interaction that Plaintiff and Jamal have ever had has taken place in Saudi Arabia (where they both reside) or elsewhere in the Middle East. [Dkt. No. 56-2 (Jamal Decl. ¶ 8).] Moreover, Plaintiff and the Barajoun Defendants have been, and continue to be, engaged in litigation in Saudi Arabia. Plaintiff's initial cease and desist letter, prepared and sent by Plaintiff's counsel, identifies an address for the Barajoun Defendants in Dubai, UAE. [Chadwick Decl. ¶ 6, Ex. C.] In meeting and conferring regarding this motion, Plaintiff's counsel could or would provide no factual basis for the assertions in the Complaint that Barajoun maintains any offices in California, or that Jamal has ever resided here. [Chadwick Decl. ¶ 4.] And, finally, in responding to the Motion to Dismiss, Plaintiff has provided no basis or justification for his false jurisdictional allegations. [Plaintiff's Opposition to Motion to Dismiss, Dkt. 68, *passim*; Decl. of Plaintiff in Support of Opposition to Motion to Dismiss, Dkt. 68-1, *passim*; Decl. of Plaintiff's Counsel in Support of Opposition to Motion to Dismiss, Dkt. 68-2, *passim*.]

Even if Plaintiff and his counsel did not make knowingly false allegations (it seems clear they did), at the very least, they failed to make a reasonable and competent inquiry as required by Rule 11. Plaintiff's prior relationship with Jamal should have put Plaintiff and his counsel on notice that Barajoun and Jamal do not reside in the United States (much less Los Angeles), and of the need to conduct a factual investigation. It is clear that no such investigation was conducted. Information identifying Barajoun's place of business as being located in Dubai is publicly available. [Chadwick Decl. ¶ 5.] Among other things, Barajoun maintains an English-language website at www.barajoun.com, which describes the company as "a leading animation & visual effects Studio in the MENA [Middle East and North Africa] region, based in Dubai, United Arab Emirates" and lists an address in Dubai, UAE.

[Id.] Further, the publicly available copyright records for the Picture identify Barajoun's domicile and citizenship as "United Arab Emirates" and contain an address in Dubai. [Dkt. No. 56-9, pp. 20 (Copyright Office Website Registration Record).] Thus, it appears that Plaintiff and his counsel did not even conduct even the most basic investigation of the accuracy of the jurisdictional allegations against the Barajoun Defendants.

Plaintiff's jurisdictional allegations concerning the Barajoun Defendants represent the epitome of bad faith. Plaintiff's lawsuit is an improper attempt to join the Barajoun Defendants in this litigation in order to harass them and force them to defend against a lawsuit in foreign county. This Court should respond to Plaintiff's plainly abusive and bad faith tactics with the imposition of sanctions under Rule 11.

## V. CONCLUSION

For the foregoing reasons, Specially Appearing Defendants Barajoun and Jamal respectfully request that the Court sanction Plaintiff and his law firm of record in this action by: (1) dismissing the Complaint with prejudice, and (2) ordering Plaintiff and his counsel to reimburse the Barajoun Defendants for the legal fees and costs incurred in bringing this motion and responding to the Complaint.

Dated: May 17. 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____/s/ James M. Chadwick_____
JAMES M. CHADWICK
DYLAN J. PRICE
Attorneys for Defendants
BARAJOUN ENTERTAINMENT FZ-LLC and
AYMAN JAMAL

-14-

Case No. 2:18-cv-7399

<u>DECLARATION OF JAMES CHADWICK</u>

I, James Chadwick, declare as follows:

1.      I am an attorney duly admitted to practice before this Court.  I am an attorney with Sheppard, Mullin, Richter & Hampton LLP, counsel of record for Specially Appearing Defendants BARAJOUN ENTERTAINMENT FZ-LLC and AYMAN JAMAL (collectively, the "Barajoun Defendants").  If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.

2.      This declaration is submitted in support of Specially Appearing Defendants Barajoun Entertainment FZ LLC and Ayman Jamal's Motion  For Sanctions ("Motion") Pursuant To Rule 11 of the Federal Rules of Civil Procedure ("Rule 11").

3.      Pursuant to the requirements of Rule 11(c)(2), on April 24, 2019, my colleague, Dylan Price, sent Plaintiff's counsel, Michael S. Traylor, an email attaching a draft of this Motion in substantially the form as filed.  My firm also sent a hard-copy of the draft to Mr. Traylor's office via FedEx.  True and correct copies of the April 24, 2019 email to Mr. Traylor and the Proof of Service evidencing service of the Motion on Mr. Traylor by FedEx are attached hereto as **EXHIBIT A** and **EXHIBIT B**, respectively.

4.      In addition, my colleague, Dylan Price, and I met and conferred with Mr. Traylor regarding this Motion on April 8, 2019.  During the meet and confer, Mr. Traylor conceded that he was aware of Plaintiff's employment with VisualizIt. Moreover, Mr. Traylor could or would provide no factual basis for the assertions in the Complaint that Barajoun maintains any offices in California, or that Jamal has ever resided here.  Nevertheless, Mr. Traylor confirmed that Plaintiff would not withdraw the Complaint nor dismiss the claims against the Barajoun Defendants.

5.      Information identifying Barajoun's place of business as being located in Dubai is publicly available.  Among other things, Barajoun maintains an English-

language website at www.barajoun.com, which describes the company as "a leading animation & visual effects Studio in the MENA [Middle East and North Africa] region, based in Dubai, United Arab Emirates" and lists an address in Dubai, UAE.

      6.    A true and correct copy of a letter, dated March 21, 2018, sent by Mr. Traylor to defendant Vertical Entertainment, LLC is attached hereto as **EXHIBIT C**.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed on this 17th day of May, 2019, at Los Angeles, California.

*/s/ James M. Chadwick*
James M. Chadwick